**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

Rod J. Rosenstein
United States Attorney

Cheryl L. Crumpton
Assistant United States Attorney

400 United States Courthouse
6500 Cherrywood Lane
Greenbelt, MD 20770-1249

DIRECT: 301-344-4130
MAIN: 301-344-4433
FAX: 301-344-4516
TTY/TDD: 301-344-2426

September 13, 2012

FILED ___  ENTERED ✓
LODGED ___  RECEIVED ___

OCT 1 0 2012

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Maury S. Epner, Esquire
Miller, Miller & Canby
200-B Monroe Street
Rockville, Maryland 20850

Re:  United States v. Alphonso Tillman
     Criminal No. [to be determined]  GLR-12-0497

Dear Mr. Epner:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by September 17, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to waive indictment and plead guilty to a Criminal Information, which will charge him with one count of causing a taxpayer to fail to account for and pay over employment taxes, in violation of 26 U.S.C. § 7202. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: First, a taxpayer had a duty to account for and pay over employment taxes to the Internal Revenue Service. Second, the Defendant caused the taxpayer to fail to account for or pay over such taxes. And third, the Defendant acted willfully.

Revised 8/8/08

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a term of imprisonment of up to five years, a fine of $250,000, and a term of supervised release of up to three years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.    If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

      d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

      i.      If the Defendant wished to be charged by indictment, he would have the right to require the government to present its case to the grand jury. The Defendant knowingly and voluntarily waives his right to grand jury indictment and agrees to proceed by information.

## Advisory Sentencing Guidelines Apply

      5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. Pursuant to U.S.S.G. §§ 2T1.6(a) and 2T4.1(I), the base offense level is **22** because the tax loss was more than $1,000,000, but not more than $2,500,000.

   b. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The final offense level is **19**.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant has reserved the right to argue for any factor that could take the sentence outside of the advisory guidelines range under 18 U.S.C. § 3553(a), and he will notify the Court, the United States Probation Officer and government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise.

Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence at the low end of the applicable guideline range. The Defendant is free to request a sentence outside of the applicable guideline range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

Restitution

11.     Defendant agrees to pay restitution to the Internal Revenue Service in the total amount of $2,205,991.40, pursuant to 18 U.S.C. § 3663(a)(3). Defendant agrees that the total amount of restitution reflected in this agreement results from Defendant's criminal conduct. The total amount of restitution consists of the following:

| Time Period | Entity | Payroll Tax Due (employee portion of FICA + employee income tax withholding) | Employer Portion of FICA Due |
|---|---|---|---|
| 2005 (Q1) | Remote Surveillance Technology Solutions | $ 67,688.59 | $ 37,862.23 |
| 2005 (Q2) | Remote Surveillance Technology Solutions | $ 79,299.86 | $ 43,778.21 |
| 2005 (Q3) | Remote Surveillance Technology Solutions | $ 98,222.82 | $ 54,018.99 |
| 2005 (Q4) | Remote Surveillance Technology Solutions | $ 123,091.44 | $ 60,598.63 |
| 2006 (Q1) | Remote Surveillance Technology Solutions | $ 139,590.60 | $ 71,452.19 |
| 2006 (Q2) | Remote Surveillance Technology Solutions | $ 144,240.88 | $ 68,336.40 |
| 2006 (Q3) | Remote Surveillance Technology Solutions | $ 143,863.58 | $ 71,037.15 |
| 2006 (Q4) | Remote Surveillance Technology Solutions | $ 100,166.42 | $ 68,013.51 |
| 2007 (Q1) | Remote Surveillance Technology Solutions | $ 83,253.44 | $ 68,029.92 |
| 2007 (Q2) | Remote Surveillance Technology Solutions | $ 91,530.51 | $ 51,427.26 |
| 2007 (Q2) | Remote Surveillance Technology Service | $ 21,946.73 | $ 10,302.65 |
| 2007 (Q3) | Remote Surveillance Technology Service | $ 109,192.63 | $ 52,287.40 |
| 2007 (Q4) | Remote Surveillance Technology Service | $ 74,104.68 | $ 34,664.55 |
| 2008 (Q1) | Remote Surveillance Technology Service | $ 54,071.85 | $ 27,035.93 |
| 2008 (Q2) | Remote Surveillance Technology Service | $ 38,739.29 | $ 19,369.65 |
| 2008 (Q3) | Remote Surveillance Technology Service | $ 34,537.65 | $ 17,268.83 |
| 2008 (Q4) | Remote Surveillance Technology Service | $ 31,311.30 | $ 15,655.65 |
| | Totals | $ 1,434,852.27 | $ 771,139.13 |
| | Grand Total (payroll tax + employer portion of FICA) | $ 2,205,991.40 | |

12.     Defendant agrees to pay restitution as ordered by the court in any restitution order entered pursuant to this plea agreement. If the Court orders Defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

Defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement. The Defendant reserves the right to request that any and all such payments of restitution first be allocated to the repayment of the payroll tax due (employee portion of FICA + employee income tax withholding, as shown in the chart in paragraph 11, above), and this Office will not oppose any such request.

### IRS Not a Party

13. Defendant understands that this agreement does not resolve any civil tax liability that he, Remote Surveillance Technology Solutions, Inc., or Remote Surveillance Technology Service, LLC, may have, and that this agreement is with the United States Attorney's Office, not with the Internal Revenue Service. The Internal Revenue Service is not a party to this agreement and remains free to pursue any and all lawful remedies it may have.

14. Defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise Defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

### Other Criminal Tax Liability

15. The parties stipulate and agree that this plea agreement is intended to resolve the Defendant's criminal liability, for purposes of criminal prosecution only, for all conduct of which the Office is currently aware related to the payment or non-payment of taxes.

### Cooperation with the IRS

16. Defendant agrees to cooperate fully with the IRS in the assessment and collection of payroll taxes – that is, Federal Insurance Contribution Act taxes (Social Security and Medicare taxes) as well as federal income taxes withheld from employee wages – due and owing as of the time of this agreement by Professional 50 States Protection, LLC ("Pro 50"), to include, amongst other cooperation: Within 90 days of signing this agreement, Defendant agrees to fully, completely, and in good faith complete and deliver to the IRS a Collection Information Statement for Businesses (IRS Form 433-B) for Pro 50 and a Collection Information Statement for Wage Earners and Self-Employed Individuals (IRS Form 433-A) for himself. Nothing in this paragraph or agreement is intended to limit the Defendant's ability to seek or negotiate alternative forms of resolution with the IRS as to any tax balances he or any of the entities referenced herein may owe.

17. Defendant agrees that he is a responsible party with respect to Pro 50's payroll taxes. He agrees to keep Pro 50 in compliance with all IRS rules and regulations governing the reporting and payment of payroll taxes, including the timely deposit of semi-weekly federal payroll tax deposits, the timely filing of Employer's Quarterly Federal Tax Returns (IRS Forms 941), and

the timely payment of payroll taxes due and owing. Notwithstanding the foregoing, the Defendant is personally relieved of these obligations during any period in which he is incarcerated or in the event ownership of Pro 50 is transferred, by sale or otherwise, to any person unrelated to the Defendant.

18. Defendant agrees that paragraphs 16 and 17 are appropriate conditions of supervised release. Defendant understands that a failure to comply with any of the conditions of his supervised release may result in revocation of his release conditions, resulting in his reincarceration for all or part of the term of supervised release.

### Collection of Financial Obligations

19. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

20. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

21. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Waiver of Appeal

22. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an adjusted base offense level of **19**; and, (ii) this Office reserves the

right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an adjusted base offense level of **19**.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

    23. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Release Pending Sentencing and Designation

    24. Based on the information currently known to this Office, and assuming the agreement of United States Pretrial Services and the United States Probation Office, this Office will not oppose the Defendant's release on personal recognizance following his entry of the plea contemplated herein pending sentencing and designation to a Bureau of Prisons facility, nor will this Office oppose the Defendant's self-surrender following such designation.

### Court Not a Party

    25. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the

Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

26.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Cheryl L. Crumpton
Assistant United States Attorney

By: _____
Daren Firestone
Special Assistant United States Attorney

Revised 8/8/08                                    9

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/13/12
Date

Alphonso Tillman

I am Alphonso Tillman's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

09-13-12
Date

Maury S. Epner, Esquire

FROM Pro50 TO:30176260044 09/13/2012 09:50:04 #11067 P.002/003